# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**AMBER SANDERS,**

    **Plaintiff,**

v.

**POSTMASTER GENERAL,** *et. al.*,

    **Defendants.**

Case No. 2:19-cv-2566
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Chelsey M. Vascura**

## OPINION & ORDER

Defendants Megan J. Brennan, in her official capacity as Postmaster General of the United States Postal Service (the "USPS"), Cherie R. Joiner, in her official capacity as an employee of the USPS, and Robyn Funderburg, in her official capacity as an employee of the USPS (collectively "Defendants") have filed a Motion to Dismiss (ECF No. 19). Plaintiff Amber Sanders ("Plaintiff") has filed a response and a sur-reply[1] (ECF Nos. 21, 24). Defendants have filed a reply (ECF No. 22). For the reasons stated herein, Defendants' Motion to Dismiss (ECF No. 19) is **GRANTED.**

## I.

Plaintiff, proceeding pro se, filed her Complaint on July 24, 2019. (*See* Compl., ECF No. 8.) The Court will begin with Plaintiff's description of the facts as stated in her Complaint. For purposes of Defendants' motion to dismiss for failure to state a claim, the allegations in her Complaint are taken as true. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The Court will then provide facts from the exhibits Defendants attached to their motion to dismiss. For

---

[1] In accordance with Local Rule 7.2(a)(2), no additional memoranda beyond a memorandum in opposition and a reply memorandum is permitted except upon leave of court for good cause shown. S.D. Ohio Civ. R. 7.2(a)(2). Plaintiff did not obtain leave to file this sur-reply. Even if the Court does consider the sur-reply, however, it does not change the result of this case.

purposes of their motion to dismiss for lack of subject matter jurisdiction the Court weighs the evidence both parties provided. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

**1. Plaintiff's Allegations**

Plaintiff began working for the USPS on November 2, 2013 as a city carrier assistant ("CCA"). (Compl. at 3.) Plaintiff has epilepsy and therefor suffers from seizures. (*Id.*) Plaintiff alleges she explained her condition to her hiring manager, trainer, and a USPS nurse, Robyn Funderburg, during her two-week training period. (*Id.*) Ms. Funderburg, Plaintiff contends, cleared Plaintiff to work as a CCA. (*Id.*)

Plaintiff had her first seizure at work on December 31, 2013. (*Id.*) Plaintiff alleges that the following day she "returned back to work like nothing [] happen[ed]." (*Id.*)

On March 26, 2014, Plaintiff had another seizure. (*Id.*) This seizure resulted in Plaintiff's hospitalization. (*Id.*) Plaintiff's manager, Cheri Joiner, accompanied her to the hospital. (*Id.*) At this time, Plaintiff's supervisor was Melanie Carmichael. (*Id.*) Plaintiff alleges that Ms. Carmichael was "disrespectful," "a bully," and used "very vulgar [] language." (*Id.*) Plaintiff believes her March 26, 2014 seizure occurred because she was "worked up" due to the fact that Ms. Carmichael "picked on" her. (*Id.*) Before Plaintiff's route on March 26, Plaintiff alleges that Ms. Carmichael stated "I will come out there and get your [a]** if you don't deliver the mail." (*Id.*) Plaintiff alleges she complained about Ms. Carmichael to her union stewards, but they did nothing. (*Id.*) After this seizure, Plaintiff did not immediately return to work. (*Id.*)

On March 31, 2014, Plaintiff visited her doctor. (*Id.*) Plaintiff's doctor cleared her to come back to work but prohibited her from operating a motor vehicle. (*Id.*) Ms. Joiner stated Plaintiff could no longer be a CCA due to her inability to drive. (*Id.*)

On July 1, 2014, Plaintiff requested an accommodation for her health condition, which she contends the USPS denied.[2] (*Id.* at 4.) Plaintiff concludes her Complaint by stating "I feel like now there is some discrimination going on in the Station."[3] (*Id.*)

In addition to the facts alleged in her Complaint, Plaintiff includes a document which appears to be a USPS brief in opposition to an appeal (the "Brief") submitted to the United States Equal Employment Opportunity Commission (the "EEOC") on February 1, 2019. (*Id.* at 5–13.) Plaintiff gives no explanation as to why she chose to include this document. The Brief contains highlighting and hand-written notes. (*Id.*) The Brief discusses Plaintiff's employment with the USPS, her seizures, and her accommodations. (*Id.*)

The Brief states Plaintiff was unable to legally drive at all material times because Ohio law suspends the licenses of individuals who have not been without a seizure for at least six months. (*Id.* at 7, 10–11.) The Brief also states that the USPS accommodated Plaintiff by giving her a position which did not require her to drive a motor vehicle. (*Id.* at 8.) Further, the Brief states, the EEOC asked Plaintiff to submit an investigative affidavit as well as authorizations and releases to obtain medical records, neither of which Plaintiff submitted. (*Id.*) Near this information, there is a handwritten note that states "why do you need my medical records." (*Id.*) The Brief asks the

---

[2] The document Plaintiff attaches to her Complaint, the document Plaintiff submits as her "declaration," Defendants' declaration submitted with their motion to dismiss, and one of Defendants' exhibits to their motion to dismiss, all state the USPS did accommodate Plaintiff by placing her in another position that did not involve operating a motor vehicle. (*See* Compl. at 7; Pl.'s Decl. at 3; Mapp Decl. ¶ 18; Defs.' Mot. Dismiss at Ex. K.)

[3] Plaintiff's Complaint contains no indication of what law she intends to sue under or why she believes she is being discriminated against. Plaintiff does indicate she is female, African American, and suffers from a disability. The Court presumes Plaintiff intends either to sue under Title VII or the Rehabilitation Act of 1973 for these statutes prohibit discrimination on the basis of age, race, and disability and allow a plaintiff to sue a federal employer. *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006) (finding Title VII allows suits against the federal government); *Smith v. United States Postal Service*, 742 F.2d 257, 259 (6th Cir. 1984) (finding the Rehabilitation Act allows suits against the federal government). Notably, the Americans with Disabilities Act ("ADA") cannot be used to sue a federal employer. *Hiler v. Brown*, 177 F.3d 542, 544 (6th Cir. 1999).

3

EEOC to deny Plaintiff's appeal of the administrative decision which found the USPS did not discriminate against Plaintiff. (*Id.*)

### 2. Defendants' Allegations

Defendants submit David E. Mapp, Esquire's declaration, as well as other documents, as exhibits to their motion to dismiss. (*See* Defs.' Mot. Dismiss, ECF No. 19.) Mr. Mapp is the attorney for the USPS Law Department assigned to Plaintiff's EEOC case. (Mapp Decl. ¶¶ 3, 5, ECF No. 19-1.) Defendants' exhibits provide a fairly similar recitation of the events described in Plaintiff's Complaint.[4] The exhibits also provide allegations as to what occurred after the events in the Complaint.

Defendants allege that subsequent to the two seizures Plaintiff describes in her Complaint, Plaintiff requested an accommodation. (*Id.* ¶¶ 16–17.) In response, in October of 2014, the USPS offered Plaintiff a position has a mail handler, which did not require holding a valid driver's license or operating a motor vehicle. (*Id.*) Plaintiff advised the USPS that she did not mind switching to this position. (*Id.*) Once in the position as a mail handler, Plaintiff continued to have seizures including on November 30, 2014, January 24, 2015, and February 14, 2015. (*Id.* ¶ 23.) During this time, on December 31, 2014, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor[5] and expressed dissatisfaction in being a mail handler. (*Id.* ¶¶ 20–21; Defs.' Mot. Dismiss at Exs. B, C.)

On February 20, 2015, the USPS placed Plaintiff on leave until she could demonstrate that she could return to work and ensure her safety and the safety of others. (*Id.* ¶ 24; Defs.' Mot. Dismiss at Ex. D.) On March 25, 2015, Plaintiff again initiated contact with an EEO counselor

---

[4] The exhibits do not provide any facts as to Ms. Carmichael or her conduct towards Plaintiff.
[5] Mr. Mapp described this as "pre-complaint counseling" with an EEO dispute resolution specialist. (Mapp Decl. ¶¶ 20–22.)

4

and expressed her dissatisfaction in not being returned to her original position as a CCA. (*Id.* ¶ 25; Defs.' Mot. Dismiss at Ex. C.)

On March 30, 2015, Plaintiff filed an administrative complaint with the EEOC alleging discrimination on the basis of her race when Defendant prevented her from returning to work. (*Id.* ¶ 26; Defs.' Mot. Dismiss at Ex. F.) Plaintiff's requested the USPS reinstate her as a CCA and compensate her with $3,000,000. (*Id.*) The EEOC accepted for investigation the issue of whether Plaintiff was accommodated properly per her medical documentation. (*Id.* ¶ 27.) Plaintiff failed to submit an affidavit that the EEOC requested and did not respond to the USPS's discovery requests. (*Id.* ¶¶ 28–30.)

On May 5, 2015, Plaintiff submitted medical documentation that she could work but could neither drive nor work around machinery. (*Id.* ¶ 32.) The USPS temporarily reassigned Plaintiff to a mail handler position away from machinery. (*Id.* ¶ 33.)

On September 28, 2018, the EEOC granted the USPS's motion for a decision without a hearing and found: (1) there was no evidence of discrimination based on race; (2) Plaintiff was not a qualified individual with a disability for purposes of being a CCA; and (3) the USPS accommodated Plaintiff when it reassigned her to the mail handler position. (*Id.* ¶ 36.) Plaintiff appealed to the Office of Federal Operations on October 30, 2018, which was denied on April 11, 2019. (*Id.* ¶¶ 37–39.)

Defendants have filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

## II.

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to

hear a case.  *Thorton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990).  "Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks."  *Ritchie*, 15 F.3d at 598.

A facial attack "questions merely the sufficiency of the pleading[,]" and the trial court therefore takes the allegations of the complaint as true and construed in the light most favorable to the nonmoving party.  *Wayside Church v. Van Buren Cty*, 847 F.3d 812, 816 (6th Cir. 2017) (quotations omitted); *Ritchie*, 15 F.3d at 598.  To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction.  *Rote v. Zel Custom Mfg., LLC*, 816 F.3d 383, 387 (6th Cir. 2016).  A factual attack is a challenge to the factual existence of subject matter jurisdiction, in which case no preemptive truthfulness applies to the factual allegations.  *Ritchie*, 15 F.3d at 598.  In the context of a factual attack, a court may weigh the evidence in order to satisfy itself as to the existence of its power to hear the case.  *Id.*  When subject matter jurisdiction is challenged, "the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction arguing the case is moot.  (Defs.' Mot. Dismiss at 7–9.)  Defendants contend this is a combined facial and factual attack and thus, the Court can weigh the evidence they have provided.  (*Id.*)  Plaintiff does not address this argument in her response or sur-reply.

"The Supreme Court has made clear that Article III requires 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'"  *Unan v. Lyon*, 853 F.3d 279, 284 (6th Cir. 2017) (citing *Preiser v. Newkirk*, 422 U.S. 395 (1975)).  It follows that "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as

6

moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (internal citations omitted). A case becomes moot when the issues are no longer "live" or "the parties lack a legally cognizable interest in the outcome." *Id.* (citing *United States Parole Comm'ns v. Geraghty*, 445 U.S. 388, 396 (1980)). The "heavy burden of demonstrating mootness" lies with the party claiming that the case is moot. *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 515, 530–31 (6th Cir. 2001).

Defendants argue Plaintiff's claim is moot because she has now returned to work at the USPS. (Defs.' Mot. Dismiss at 16 (citing Mapp Decl. ¶¶ 32–33).) Plaintiff does not respond to this argument in her response or sur-reply.

The Complaint alleges Defendants discriminated against Plaintiff resulting in the loss of her position as a CCA. (Compl. at 3.) As a remedy, Plaintiff seeks monetary damages, a "return to the carrier craft," and back-pay for the time she was not working. (*Id.* at 5.) While Defendants argue Plaintiff has returned to work, Defendants' own description of the facts make clear that Plaintiff has returned to work not as a CCA, but in a different position, a mail handler. (*See* Mapp. Decl. ¶ 33.) Thus, Plaintiff still has a stake in the litigation for she seeks return to the CCA position. Additionally, there is no indication that Plaintiff has been paid back-pay or any damages. Thus, her claim is not moot, and the Complaint will not be dismissed under Rule 12(b)(1).

### III.

Federal Rule of Civil Procedure 12 authorizes dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To meet this standard, the complaint must allege facts sufficient to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule

7

12(b)(6) motion, the Court construes the complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera*, 551 F.3d at 466.

Nonetheless, the Court must read Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8(a), requiring a short and plain statement of the claim showing that the plaintiff is entitled to relief. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 907 (S.D. Ohio 2013). Thus, a pleading's factual allegations, assumed to be true, must do more than create mere speculation of a legally cognizable claim; they must show entitlement to relief. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Further, "the tenet that courts must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 662. As such, while a plaintiff is not required to set forth detailed factual allegations at the pleading stage, a complaint must contain a basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *See id.* at 679; Fed. R. Civ. P. 8(a).

Moreover, courts are called to "liberally construe pro se complaints and hold such complaints to a less stringent standard than pleadings prepared by attorneys." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Such "lenient treatment has limits," however, and courts "should not have to guess at the nature of the claim asserted . . . ." *Id.* at 977 (internal quotations omitted).

Defendants allege the Complaint should be dismissed under Rule 12(b)(6) because Plaintiff failed to exhaust administrative remedies and because Plaintiff's Complaint fails to state a claim upon which relief may be granted.

1. **Failure to Exhaust Administrative Remedies**

"It is well established that a Title VII claim against a governmental agency cannot be

maintained unless the administrative steps outlined in the EEOC regulations have been exhausted.[6] *Kuriakose v. Veterans Affairs Ann Arbor Healthcare Sys.*, No. 14-12972, 2017 U.S. Dist. LEXIS 171098, at *37 (E.D. Mich. Oct. 17, 2017) (citing *Brown*, 425 U.S. at 832). The Sixth Circuit has explained this requirement stating that "[i]n permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *Id.* (quoting *Brown*, 425 U.S. at 883). In order for a plaintiff to exhaust her administrative remedies, she must make timely contact with the EEOC. *See McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002).

At issue in this case is the requirement that federal employees claiming discrimination "contact an [EEO] counselor within forty-five days of an alleged discriminatory occurrence." *Steiner*, 354 F.3d at 435 (citing 29 C.F.R. § 1614.105(a)(1) (2003)). "Failure to comply with this requirement is cause for dismissal of the complaint by the agency, *see* 29 C.F.R. § 1614.107(a)(2) (2003), as well as by the district court." *Id.* (citing *see Brown*, 425 U.S. at 832).

Defendants contend that Plaintiff failed to contact an EEO counselor within 45 days of the alleged discrimination. (Def.'s Mot. Dismiss at 10–11.) Plaintiff argues Defendants' argument is untimely, and must fail, because the matter already went through the EEOC's administrative process. (Pl.'s Resp. at 1, ECF No. 21; Pl.'s Sur-reply at 1, ECF No. 24.)

Plaintiff's Complaint is not entirely clear as to which of Defendants' actions she believes were discriminatory. Plaintiff was first placed on leave as a result of her seizure on March 26, 2014, when the seizure resulted in hospitalization while on the job. (*See* Compl. at 3.) If it is this

---

[6] The same is true if the Plaintiff intended to bring this claim under the Rehabilitation Act. *See Smith*, 742 F.2d at 262 (administrative remedies must be exhausted for claims brought under the Rehabilitation Act regardless of if they brought under Section 501 or 504).

action which Plaintiff contends is discriminatory, she was required to initiate contact with a counselor by May 8, 2014. Plaintiff failed to do so for her initiation with a counselor did not occur until December 31, 2014. (*See id.* at 7.)

Plaintiff also alleges that at some point Defendants offered her a different position as an accommodation. (*Id.*) The Complaint does not make clear exactly what date Plaintiff was offered or began this position. The document attached to her Complaint states "[i]n June 2014, Complainant requested an accommodation. Thereafter Complainant was offered and accepted a position as a mail handler associate." (*Id.* at 11.) If Plaintiff started the new position in June of 2014, or even a month later in July of 2014, it is clear she did not initiate contact with the counselor in 45 days. Defendants contend the USPS offered Plaintiff the position on October 8, 2014. (Mapp Decl. ¶ 18.) Even if the position started at this point, Plaintiff did not initiate contact within 45 days, and instead waited 71 days. Thus, construing the Complaint liberally, it is clear Plaintiff did not initiate contact with an EEO counselor within the time limitations imposed by the regulations.

"Although the 45-day requirement in 29 C.F.R. § 1614.105 is subject to equitable tolling[,] waiver, and estoppel, '[t]he party seeking equitable tolling bears the burden of proving he is entitled to it.'" *Kim v. Brennan*, No. 2:14-cv-116, 2016 U.S. Dist. LEXIS 134622, at *9 (S.D. Ohio Sept. 29, 2016) (quoting *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010)); *McFarland*, 307 F.3d at 406 (noting the exhaustion requirement is subject to waiver, estoppel, and equitable tolling) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Here, Plaintiff has not attempted to argue that equitable tolling, waiver, or estoppel should apply. Thus, this Court finds no reason to toll or set-aside the 45-day requirement.[7] *See id.* (granting the

---

[7] Even if the Court were to consider equitable tolling, it is only available in "the most compelling of circumstances and only when a litigant's failure to meet the deadline arose from circumstances beyond her control.'" *Peterson v. Hopson*, No. 17-2891, 2018 U.S. Dist. LEXIS 122519, at 11* (W.D. Tenn. Jan. 17, 2018) (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000)). Neither the Complaint nor any of the

defendant summary judgment when the plaintiff failed to initiate contact with an EEO counselor in 45 days or provide an argument as to setting aside the requirement).

Plaintiff's response that Defendants' motion is untimely is without merit. First, Plaintiff cites Federal Rule of Civil Procedure 12 noting that a motion to dismiss must be filed before another responsive pleading. (Pl.'s Resp. at 1.) Plaintiff is correct in her statement of the rule, but incorrect in her argument that Defendants failed to comply with it. Defendants filed this motion on January 27, 2020, pursuant to a stipulated extension of time and before any other responsive pleading was filed. (*See* ECF No. 16.) Thus, Defendants' motion was timely.

Additionally, Plaintiff argues the motion is untimely because the matter already proceeded through the EEOC. (Pl.'s Resp. at 1.) As an initial matter, Plaintiff's Complaint does not make clear that this matter proceeded through the EEOC. Plaintiff does not allege she filed a complaint, it was considered, she appealed, or any other similar allegation. The document she attaches to the Complaint provides some insight and seems to indicate she filed a charge but does not state the outcome for it is only a responsive brief filed by the USPS. It is only if the Court considers the exhibits Defendants provided in connection with their motion to dismiss does it become clear the matter did in fact proceed through the EEOC with a result of a finding of no discrimination.

Even if the Court assumes the matter did go through the EEOC, the EEOC "has not and cannot waive the *employer's* statutory prerogative to object to the untimely nature of the administrative charges." *Allen v. Diebold, Inc.*, 807 F. Supp. 1308, 1313 (S.D. Ohio 1992) (emphasis in original); *Fryman v. Conagra, Inc.*, No, 90-200, 1991 U.S. Dist. LEXIS 20015, at *13 (E.D. Ky. Mar. 29, 1991) ("[T]he EEOC cannot waive [the employer's] objection to the late filing of [the plaintiff's] complaint. The EEOC is not a party to this action and what it may have

---

other documents submitted in this case appear to show Plaintiff's delay in contacting a counselor arose from circumstances beyond her control.

11

waived or not waived on its own behalf is not an issue to [the employer.]"); *Graves v. Univ. Mich.*, 553 F. Supp. 532, 534 (E.D. Mich. 1982) ("The EEOC's decision to process an untimely charge is not binding on this court.").

Thus, dismissal is warranted. *See Hurst v. Dep't of Veterans Affairs*, No. 18-3185, 2018 U.S. App. LEXIS 20114, at *4 (6th Cir. July 19, 2018) (finding the district court correctly dismissed the complaint when the plaintiff failed to properly exhaust administrative remedies by failing to contact an EEO counselor within forty-five days of the date of his termination); *Phoenix v. Dep't of the Army*, No. 3:17-CV-598, 2019 U.S. Dist. 16139, at *7 (W. Ky. Jan. 31, 2019) (dismissing a Title VII claim for failure to comply with the 45-day initiation of contact with a counselor requirement). Even if the Court considered the Complaint, despite its untimely filing with the EEOC, Plaintiff failed to state a claim upon which relief can be granted.

**2. Failure to State a Claim**

The Complaint states "I feel like now there is some discrimination going on in the station." (Compl. at 4.) Under Title VII there are two ways Plaintiff can prove discrimination.[8] First, through direct evidence, which is evidence that "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Plaintiff's complaint does not allege any direct evidence of discrimination, and instead only asserts Plaintiff "feel[s]" like there is discrimination. Thus, Plaintiff has not stated a claim for discrimination with direct evidence.

---

[8] As stated above Plaintiff's Complaint does not make clear which federal discrimination statute she is suing under. Title VII and the Rehabilitation Act, however, are interpreted similarly and both require the plaintiff to be qualified for the position she seeks. *Center v. City of W. Carollton*, 227 F. Supp. 2d 863, 867 (S.D. Ohio 2002) (noting that Title VII is to be interpreted in a manner consistent with the Rehabilitation Act and thus cases construing one statute are instructive in construing the other); *Pickard v. Widnall*, No. 94-0040, 1994 U.S. Dist. LEXIS 20658, at *19–20 (S.D. Ohio Dec. 15, 1994) (noting that handicap discrimination under the Rehabilitation Act can be established through indirect evidence in a modified *McDonnel-Douglas* Title VII framework). Thus, the Court's analysis of a Title VII claim also shows Plaintiff has failed to state a claim under the Rehabilitation Act.

Plaintiff can also prove a claim for discrimination through circumstantial evidence. *Peeples v. City of Detroit*, 891 F.3d 622, 634 (6th Cir. 2018). To do so:

> [T]he *McDonnel Douglas* burden shifting framework requires that [a plaintiff] prove four elements: (1) [she was a] member[] of a protected class; (2) [she] suffered [an] adverse employment action[]; (3) [she was] qualified for [her] position[]; and (4) [she was] replaced by someone outside of the protected class or [was] treated differently than similarly-situated, non-protected employees. The burden then shifts to the [defendants] to articulate some legitimate, nondiscriminatory reason for the employment decisions. If the [defendants] do[] so, then [the plaintiff] need[s] to demonstrate the reason given was pretextual.

*Id.* (internal citations omitted).

Defendants argue that Plaintiff's Complaint does not make out the prima facie case. Specifically, Defendants contend Plaintiff cannot state a claim that she was qualified for the position as a CCA because her seizures made her ineligible for a driver's license under Ohio law. Driving, Defendants note, is an essential part of the CCA position. Plaintiff argues that she is, and has always been, qualified to be a CCA because she never lost her driver's license.

Ohio Revised Code § 4507.08(D)(3) provides that no driver's license shall be issued to, or retained by, "[a]ny person who . . . is afflicted with or suffering from a physical or mental disability or disease that prevents the person from exercising reasonable and ordinary control over a motor vehicle while operating the vehicle upon the highways." At least one Ohio court has applied this provision to a person with epilepsy. *See Vinci v. Heimbachi,* Nos. 73440, 73464, 1998 WL 895381, at *3 (Ohio Ct. App. Dec. 17, 1998). Individuals falling within this category may apply for "restrictive licenses" which are valid for six months if "the person presents a statement from a licensed physician that the person's condition is under effective medical control and the period of time for which the control has been continuously maintained." Ohio Rev. Code § 4507.08(D).

Plaintiff's Complaint states that she had at least two seizures while a CCA, one of which resulted in her hospitalization. Plaintiff's doctor then stated she could not operate a motor vehicle.

13

Thus, under Ohio law, Plaintiff was not eligible for a driver's license.  The driver's license she maintains she had was invalid.  Plaintiff's Complaint does not state that she obtained, or applied for, a restrictive driver's license.  Under these facts as stated in the Complaint, Plaintiff was not qualified for the CCA position because she could not legally drive.

Additionally, even if the Court takes what Plaintiff argues as true, and she did somehow have a valid driver's license, Plaintiff states that on March 31, 2014 her doctor said she could not drive for three months.  For at least those three months, Plaintiff was not qualified for the CCA position.  It was during these three months, in June of 2014, when the USPS assigned Plaintiff to the mail handler position.  Thus, even if Plaintiff had a valid driver's license at the time when Defendants reassigned her, she was not qualified for the position as a CCA because she could not operate a motor vehicle at her doctor's orders.  Plaintiff's Complaint fails to state a claim for the second element of the prima facie case for discrimination.

Even if the Court looks beyond the Complaint to the additional documents Plaintiff submitted, the result remains the same.  Plaintiff attached a document to her Complaint which discusses administrative proceedings involving Plaintiff and the USPS.  (Compl. at 6–13.)  This document, however, is contradictory to the Complaint and hurts Plaintiff's argument that she was qualified to be a CCA.  The document discusses how Plaintiff was not qualified for a valid driver's license under Ohio law.  There is a handwritten note that says "the doctor took [sic] me off only for 6 months."  Assuming this is talking about Plaintiff's ability to drive, and taking it as true even though it is contradictory to Plaintiff's Complaint which states the doctor prohibited her from driving for only 3 months, this does not change the fact that under Ohio law Plaintiff was not eligible for a valid driver's license.  Additionally, as stated above, the initial position change occurred only three months after the doctors note, and thus, was still within the time frame when

14

the doctor did not allow Plaintiff to drive.

In addition to the document attached to the Complaint, Plaintiff also submitted what she refers to as a "declaration." (*See* Pl.'s Decl., ECF No. 3.) This "declaration" appears to be an EEOC decision denying Plaintiff's request for an appeal. (*See id.*) Like the document attached to the Complaint, this document discusses administrative proceedings between Plaintiff and the USPS. Also like the document attached to the Complaint, this document explains how Plaintiff was accommodated for her disability because she could not legally drive and thus, was not qualified for the position of a CCA. In sum, even if the Court looks beyond the Complaint to the additional documents Plaintiff submitted, and takes all of the factual allegations in the light most favorable to Plaintiff, she has not stated a claim upon which relief can be granted because she cannot make out a prima facie case of discrimination.[9]

Even if Plaintiff could show a prima facie case for discrimination, Defendants articulated a legitimate nondiscriminatory reason for why they moved her to another position. Defendants explained they moved Plaintiff for her safety and the safety of others in light of the many seizures Plaintiff had while on the job. In response, Plaintiff has asserted nothing which could show this was pretextual for discrimination. [10]

In sum, even when construing all that Plaintiff has submitted liberally, there is no indication

---

[9] In addition to failing to allege the second element of the prima facie case, the Complaint is completely devoid of facts which could state a claim for the fourth element, that Plaintiff was replaced by someone outside of the protected class. Plaintiff's response mentions other CCAs in similar situations but the Complaint and accompanying documents contain nothing of this sort. Further, Plaintiff's Complaint does not state which protected class Plaintiff is asserting she is in. Plaintiff could be alleging discrimination based on her gender, because she is female, but could also be alleging discrimination based on other protected classes such as race or disability. Plaintiff's Complaint, even when construed liberally, does not provide Defendants notice of what the claims are. *See Iqbal*, 556. U.S. at 678–79.

[10] This action flows naturally out of the EEOC proceedings, and thus, the Complaint Plaintiff submitted to the EEOC may shed light on the factual allegations of this suit. Plaintiff, however, did not submit the administrative complaint. Defendants submitted a document it alleges is the administrative complaint, which even if considered, does not assist Plaintiff for it provides no further details on the factual allegations. (*See* Defs.' Mot. Dismiss at Ex. F (stating "[t]hey violated my Title VII rights, under the discrimination act of 1963 when they would not allow me to return to work, even though I had a doctor's excuse").)

15

of what actions she believes form the basis for this Complaint and she has not stated a claim for which relief may be granted.[11]  Thus, Defendants' Motion to Dismiss under Rule 12(b)(6) is **GRANTED**.

## IV.

In accordance with the above, Defendants' Motion to Dismiss (ECF No. 19) is **GRANTED**.  The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**


**7/15/2020**                                            **s/Edmund A. Sargus, Jr.**
**DATE**                                                 **EDMUND A. SARGUS, JR.**
                                                         **UNITED STATES DISTRICT JUDGE**

---

[11] The Court need not consider Defendants' additional argument for dismissal that Plaintiff made a false allegation of poverty in connection with her motion to proceed *in forma pauperis*. (Defs.' Mot. Dismiss at 16.)